UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA
OMAHA DIVISION

| | |
|---|---|
| FRED H. KELLER, JR., <br> JUAN ARMENTA, JUAN DOE, <br> JUANA DOE and JUANA DOE #2 <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF FREMONT, <br><br> Defendant, | Civil Action No. _____ <br><br> **COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**ORIGINAL COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. This action challenges the City of Fremont's Ordinance 5165 under the U.S. Constitution and federal statutes and seeks declaratory and injunctive relief to halt its implementation and enforcement.

2. On June 21, 2010, Fremont voters passed Ordinance 5165 ("the Ordinance") by a vote of 3,906 to 2,908 and on June 29, 2010 the Dodge County Clerk certified the election results. The Ordinance seeks to regulate immigration and in particular illegal aliens in Fremont and is scheduled to go into effect on July 29, 2010.

3. The Ordinance requires all potential tenants who wish to rent or lease a dwelling unit in the City of Fremont to apply for an occupancy license that requires the tenant to attest or document their U.S. Citizenship or legal immigration status as a condition precedent to signing a lease and authorizes the Fremont Police Department to verify the status of any non U.S. citizen or national with the federal government to ensure that the individual is present legally in the

1

United States. In addition, the Ordinance creates a civil penalty for any lessor to rent or lease a dwelling unit without ensuring the tenant has obtained a valid occupancy license. The Ordinance also penalizes tenants who fail to obtain said license.

4. The Ordinance also requires all employers, whether they apply for a license to conduct business in Fremont or employ one or more employees that do work in the City of Fremont, to attest that they do not hire any unauthorized workers and that they register with the E-Verify program as a condition of doing business with or in the City of Fremont.

5. Ordinance 5165 is similar to local ordinances or laws passed in Escondido, California; Riverside, New Jersey; Hazelton, Pennsylvania; Farmers Branch, Texas; Valley Park, Missouri; and Cherokee County, Georgia. Like the laws in these other cities, the Ordinance seeks to regulate immigration at the local level and imposes severe burdens on tenants living in apartment complexes and the local business people who operate those complexes.

6. Courts in other jurisdictions, faced with similar local ordinances or laws, have enjoined their implementation. *See Villas at Parkside Partners, et. al. v. City of Farmers Branch, Texas*, No. 08-cv-01551-B, dkt #33 (N.D. Tex. Sept. 22, 2008); *Lozano v. City of Hazleton,* No. 3:06cv1586, 2006 U.S. Dist. LEXIS 79301, dkt. #409 (M.D. Pa Oct. 31, 2006); *Garrett v. City of Escondido,* No. 06CV2434 JAH (NLS), dkt. #25 (S.D. Cal. Nov. 20, 2006); *Reynolds v. City of Valley Park,* No. 06-CC-3802 (Mo. Cir. Ct. St. Louis County Sept. 27, 2006).

7. In fact, Ordinance 5156 is very similar to the most recent ordinance passed in Farmers Branch, Texas, which on March 24, 2010, United States District Judge Jane J. Boyle struck down. *See Villas at Parkside Partners, et al. v. City of Farmers Branch,* No. 08-cv-1551-B, 2010 WL 1141398 (N. D. Tex, March 24, 2010).

8. The Fremont Ordinance imposes substantial civil penalties on property owners, property managers, tenants, employers, and employees.

9. Plaintiffs have no plain, speedy, or adequate remedy at law other than the relief requested in this complaint. Unless enjoined by this Court, the Ordinance will impermissibly burden the constitutional and statutory rights of Plaintiffs.

## JURISDICTION

10. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

11. Plaintiffs' causes of action under the laws and Constitution of the United States. This Court has original jurisdiction over Plaintiffs' request for declaratory and injunctive relief pursuant to 28. U.S.C. § 2201 and § 2202 and Fed. R. Civ. P. 57 and 65.

## VENUE

12. Venue is proper in the District of Nebraska under 28 U.S.C. § 1391 (b) because all of the events giving rise to the claims made in this complaint occurred and will occur in this judicial district and because the defendant City of Fremont is located in this district.

## PARTIES

**Plaintiffs**

13. Plaintiff Fred H. Keller, Jr., is a citizen of the United States. He presently resides in Arlington, Nebraska.

14. Plaintiff Keller owns a multi-unit apartment building in Fremont, Nebraska, and rents the units on a month-to-month basis.

15. Plaintiff Keller has never asked any of his tenants to submit any documents or papers relating to their immigration status nor does he believe he should be required to do so.

16. Plaintiff Keller understands that all applicants who wish to rent property in his apartment building must apply for occupancy license that requires them to demonstrate that they are legally present in the United States.  Plaintiff Keller does not know whether the Ordinance requires him to have all of his current tenants as well as their families apply for an occupancy license.

17. Plaintiff Keller is concerned that the ordinance is vague and unclear and that he could be subject to multiple financial penalties without being given proper notice or the ability to cure any violations to avoid paying a financial penalty.

18. Plaintiff Juan Armenta is Latino and a legal permanent resident of the United States.  He resides in the City of Fremont, Nebraska.

19. Plaintiff Armenta and his family are tenants of an apartment unit which he rents on a month-to-month basis.  Mr. Armenta plans to continue living in Fremont, Nebraska.

20. Plaintiff Armenta does not know whether he is required to procure an occupancy license every month so that he can continue living in the rental unit he currently rents.

21. Plaintiff Armenta is concerned that when he tries to move to a different rental unit, a future landlord may deny him the right to rent a unit either because he is Latino or because of his immigration status.

22. Plaintiff Juan Doe is Latino and is presently in immigration proceedings.  He lives in the City of Fremont, Nebraska, and he wishes to continue living in Fremont.

23. Plaintiff Juan Doe is a tenant of an apartment unit located in Fremont.  He rents the unit on a month-to-month basis and, thus, does not have a lease with a landlord.

24. Plaintiff Juan Doe does not know whether he is required to procure an occupancy license every month so that he can continue living in the rental unit he currently rents.

25. Plaintiff Juan Doe is concerned that if he tries to move to a different rental unit, a future landlord may deny him the right to rent a unit either because he is Latino or because of his present immigration status.

26. Plaintiff Juana Doe is a Latina and presently undocumented. She resides in the City of Fremont, Nebraska and she wishes to continue living in Fremont.

27. Plaintiff Juana Doe is a tenant of an apartment unit located in Fremont. She rents the unit on a month-to-month basis and, thus, does not have a lease with a landlord.

28. Plaintiff Juana Doe does not know whether she is required to procure an occupancy license every month so that she can continue living in the rental unit she currently rents.

29. Plaintiff Juana Doe is concerned that if she tries to move to a different rental unit, a future landlord may deny her the right to rent a unit either because she is Latina or because of her present immigration status.

30. Plaintiff Juana Doe #2 is a Latina and presently undocumented. She resides in the City of Fremont, Nebraska and she wishes to continue living in Fremont.

31. Plaintiff Juana Doe #2 is a tenant of an apartment unit located in Fremont. She rents the unit on a month-to-month basis and, thus, does not have a lease with a landlord.

32. Plaintiff Juana Doe #2 does not know whether she is required to procure an occupancy license every month so that she can continue living in the rental unit she currently rents.

33. Plaintiff Juana Doe #2 is concerned that if she tries to move to a different rental unit, a future landlord may deny her the right to rent a unit either because she is Latina or because of her present immigration status.

**Defendant**

34.     Defendant City of Fremont is a municipal corporation created pursuant to the Nebraska Law, and located within the State of Nebraska. During the relevant time period alleged herein, the city and its agents, including its governing body, the Fremont City Council, acted under color of law.

35.     Defendant City of Fremont is not a home rule city and thus only has those powers granted to the city by the Nebraska State Legislature.

## STATEMENT OF FACTS

**The City of Fremont**

36.     Fremont is located in Dodge County, Nebraska, and is a short drive from the City of Omaha.

37.     According to the 2000 Census, the population of Fremont is 25,174. The 2000 Census also showed that foreign born persons of all nationalities comprise 3.0% of the City's total population.

38.     According to the 2000 Census, the Hispanic population in the Fremont community was 1,085, or 4.3 % of the total population.

39.     Over the course of the 1990's, the Hispanic population in Fremont increased dramatically from 165 residents of Hispanic Origin to 1,085 residents of Hispanic Origin – an increase from .006 % to 4.3 % of the City's total population.

40.     Projections from the American Community Survey (a part of the U.S. Census Bureau) estimate that the Hispanic population will increase to 1,995 and will comprise 7.8% of the total population of Fremont.

41.     Close to one-third of occupied housing in the City is renter-occupied.

**History of the Enactment Ordinance**

42. On July 8, 2008, Ordinance 5165 was proposed to the Fremont City Council.

43. The Ordinance prohibited the harboring of and renting to illegal immigrants as well as a provision to prohibit the hiring of illegal immigrants.

44. On July 29, 2008, the Fremont City Council rejected the Ordinance.

45. On September 7, 2008, the residents of Fremont began circulating a petition to hold a special election for the purpose of enacting the Ordinance.

46. On March 11, 2009, the City of Fremont filed a declaratory judgment action in Nebraska state court alleging that the proposed ordinance violated U.S. Supremacy clause and violated the Nebraska's single subject rule.

47. On March 25, 2009, Fremont residents obtained enough signatures to place the proposed ordinance on the ballot.

48. On April 20, 2009, the Nebraska District Court dismissed the City of Fremont's constitutional challenge on the ground that it was non-justiciable and granted the defendants' motion for summary judgment that the Ordinance did not violate the single subject rule.

49. On April 23, 2010, the Supreme Court of Nebraska in *City of Fremont v. Kotas*, 279 Neb. 720, 722 (Neb. 2010), affirmed the Nebraska district court's dismissal of the City's preemptive challenge to the Ordinance.

50. The Nebraska Supreme Court held that City of Fremont's request for a declaratory judgment on the constitutionality of the proposed ordinance constituted "a request for an advisory opinion [and was] outside the jurisdiction of the court." *Id.* at 727.

51. The Nebraska Supreme Court also upheld the district court's holding that the ordinance did not violate the single subject rule because the ordinance had "one general subject- the regulation of illegal aliens in Fremont." *Id.* at 727-28.

52. On May 14, 2010, the Ordinance was set for a Special Election.

53. On June 21, 2010, Fremont voters passed Ordinance 5165 by a vote of 3,906 to 2,908.

54. On June 29, 2010, the County made the results official.

55. On July 13, 2010, the City Council officially received the results.

56. The Ordinance will go into effect on or about July 29, 2010.

**Overview of Ordinance 5165**

57. The Ordinance amends the Fremont Municipal Code, Ordinance No 3139, to prohibit the harboring of illegal aliens or hiring of unauthorized aliens, providing definitions, making provision for occupancy licenses, providing judicial process, repealing conflicting provisions, and establishing an effective date for the Ordinance.

58. The Ordinance contains four sections.

59. The first section details the prohibition against harboring of illegal aliens in an person's home, apartment, or "dwelling unit"; the creation of an occupancy license scheme used to ensure that landlords are only renting to individuals who are legally present in the U.S.; a new business license scheme requiring all employers doing business with and in the city to register with the E-Verify Program; enforcement provisions for both the housing and employment provisions and definitions.

60. The second section deals with construction and severability and states that "If any part or provision of this Ordinance is in conflict or inconsistent with applicable provisions of

8

federal or state statutes, or is otherwise held to be invalid or unenforceable by any court of competent jurisdiction, such part of provision shall be suspended and superseded by such applicable laws or regulations, and the remainder of this Chapter shall not be affected thereby."

61. The third sections repeal all prior inconsistent ordinances.

62. The fourth section sets forth the effective date of the ordinance, i.e., "after passage and publication according to law."

**Ordinance Definitions**

63. The Ordinance defines "illegal alien" as an alien who is not lawfully present in the United States according to the terms of U.S. Code Title 8, Section 1101 *et seq*.

64. The Ordinance defines "unlawfully present" as unlawfully present in the United States according to the terms of U.S. Code Title 8, Section 1101 *et seq*.

65. The Ordinance defines "unauthorized alien" as an alien who does not have authorization of employment in the United States, as defined by U.S. Code Title 8, Section 1324a(h)(3).

66. Pursuant to the Ordinance, the City shall not conclude that an alien is illegal or unauthorized or unlawfully present in the United States unless and until an authorized representative of the City has verified with the federal government, pursuant to United States Code Title 8, Section 1373 (c), such alien's immigration status or lack of authorization to work in the United States.

67. 8 U.S.C. 1373(c) states that "[t]he Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the

agency for any purpose authorized by law, by providing the requested verification or status information."

68. The Ordinance defines "dwelling unit" as a single residential unit with living facilities for one or more persons, including space for living, sleeping, eating, cooking, bathing and sanitation, whether furnished or unfurnished, that is let or rented for valuable consideration.

69. The term "dwelling unit" does not include a dormitory room at a postsecondary educational institution, a room at a shelter for the homeless or the abused, or a hotel room.

70. The Ordinance defines "occupant" as a person, age 18 or older, who resides at a dwelling unit; it does not include a temporary guest of an occupant.

71. The Ordinance defines "lessor" as a person who leases or rents a dwelling unit as, or on behalf of, a landlord.

72. The Ordinance defines "business entity" as any person, group of persons, partnership or corporation that engages in any activity, enterprise, profession or occupation for financial gain, benefit, or livelihood, and shall include all such activities, enterprises, professions, or occupations, whether preformed in one or more establishments by one or more corporate or other organizational units, including departments or establishments operated through leasing arrangements, whether for profit or not-for-profit.

73. Additionally, the term "business entity" shall include but not be limited to contractors, subcontractors, self-employed individuals, partnerships, and corporations and shall include both business entities that are required to obtain a license or permit to conduct business in the City of Fremont, and businesses that are not required to obtain a license or permit to conduct business in the City of Fremont.

74. The Ordinance defines "business license" as any license, permit, occupation tax registration, business registration, or registration certification issued to a business entity by the City, including but not limited to all such licenses and permits described under the Fremont Municipal Code, Ordinance No. 3139.

**Ordinance's Harboring Provision**

75. The Ordinance defines harboring as either (a) "let[ing], leas[ing], or rent[ing] a dwelling unit to an illegal alien, knowing or in reckless disregard of the fact [of their illegal status]" or (b) "suffer[ing] or permit[ting] the occupancy of the dwelling unit by an illegal alien, knowing or in reckless disregard of the fact [of their illegal status]."

76. Furthermore, it requires legal presence in the U.S. as a "condition of the lease."

**Ordinance's Occupancy License Scheme**

77. Prior to leasing any rental unit in the City of Fremont, an occupant, or a prospective tenant, must apply for an "occupancy license" with the city.

78. The owner or manager of any dwelling unit (hereinafter "lessor") has no duty to acquire a license for the tenant(s),

79. The lessor, however, is required to notify the occupant or prospective tenant of the requirement to obtain a license.

80. A lessor may not rent or lease a property to a tenant without a valid occupancy license.

81. The application for a license contains mostly standard personal information such as name, mailing address, employer, date of birth, etc. but it also includes a final section regarding the individual's citizenship or status that reads:

11

"(a) *in cases in which the applicant is a United States citizen or national,* a signed declaration that the applicant is a United States citizen or national on a form provided by the City, which notifies the applicant that knowingly making any false statement or claim that he or she is, or at any time has been, a citizen or national of the United States, with the intent to obtain a state benefit or service is a crime under United States Code Title 18, Section 1015(e); Or

*(b) in cases in which the applicant is not a United States citizen or national,* an identification number assigned by the federal government that the occupant believes establishes his lawful presence in the United States (examples include, but are not limited to: resident alien card number, visa number, 'A' number, 1-94 registration number, employment authorization number, or any other number on a document issued by the U.S. Government). *If the alien does not know of any such number, he shall so declare. Such a declaration shall be sufficient to satisfy this requirement.*"

82. The Ordinance states that the City will not deny an occupancy license to any occupant who submits a completed application and pays the application fee.

83. The information contained within the application is confidential, except that the City may furnish any information to other government entities as authorized by law pursuant to 8 U.S.C. § 1373.

84. Subsection 4 of the first section requires the Fremont Police Department to submit the information of any non-citizen or non-national of the U.S. to the federal government to ascertain their immigration status.

85. The Ordinance authorizes the Fremont Police Department to enter into a memorandum of understanding to use the Systematic Alien Verification for Entitlement (SAVE), operated by the U.S. Department of Homeland Security, or utilize any other process or system designated by the federal government.

86. If the federal government determines that the occupant is not legally present, then the occupant has sixty (60) days to obtain a correction.

87. Unless the occupant is able to correct the government's determination, the Fremont Police Department will "reverify" the occupant's status no earlier than the 61st day.

88. If the occupant's information again indicates that they are not legally present, then a revocation of the occupancy license will be sent to their address. The occupant must then vacate the dwelling within 45 days.

89. The Ordinance makes it a violation for a lessor to lease or rent any dwelling unit without receiving an approved occupancy license from an occupant and for a lessee to lease or rent without acquiring the license as well.

90. Violators of the occupancy license provision are subject to a fine of $100 for each offense.

91. Any party affected by a revocation of an occupancy license or for violating the Ordinance may seek judicial review in a court of competent jurisdiction.

92. With respect to a question regarding the immigration status of an occupant, the Ordinance states as follows:

> In a suit for judicial review in which the question of whether the occupant is an alien not lawfully present in the United States is to be decided, that question shall be determined under federal law. In answering the question, the court shall defer to any conclusive ascertainment of immigration status by the federal government.
>
> [] The court may take judicial notice of any ascertainment of the immigration status of the occupant previously provided by the federal government. The court may, either sua sponte or at the request of a party, request the federal government to provide, in automated, documentary, or testimonial form, a new ascertainment of the immigration status of the occupant pursuant to United States Code Title 8, Section 1373(c). The most recent ascertainment of the immigration status of an individual by the federal government shall create a rebuttable presumption as to the individual's immigration status.

**Ordinance's Employment Provision**

93. The Ordinance requires all business entities applying for a business license with the City, awarded a City contract, or seeking any grant or loan from the City to execute an affidavit stating that they do not knowingly employ any "unauthorized aliens" and providing written verification that they have registered with the E-Verify program; approval of a license is conditioned upon fulfilling these requirements.

94. All City agencies are required to register with the E-Verify program and to authorize all employees hired after registration.

95. Every business entity "employing one or more employees and performing work within the City shall register with E-Verify" within sixty (60) days after the enactment of the Ordinance.

96. The Employment Provision does not extend to an employer who hires an independent contractor or to "the intermittent hiring of casual labor for domestic tasks customarily performed by the residents of a dwelling."

97. The employment provision will be enforced by the City Attorney.

98. According to the Ordinance, any business entity that fails to register with E-Verify or verify the work authorization of their employees "shall be tried at a public hearing before the City Council."

99. The business entity will have the opportunity to present evidence and may appeal a City Council decision to the District Court of Dodge County.

100. If the City Council determines that the business entity has violated the Ordinance it may revoke a business license, cancel any contracts and demand repayment of the loan or grant.

101. The City Attorney may also bring a civil action in a court of competent jurisdiction in Dodge County.

102. The business entity may also seek pre- or post-deprivation judicial review and any decision regarding licenses, contract or loans will be stayed until a determination is made by the court.

## FIRST CAUSE OF ACTION

### SUPREMACY CLAUSE OF THE U.S. CONSTITUTION

103. Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

104. The ordinance violates the Supremacy Clause, Article VI Clause 2 of the U.S. Constitution, because it attempts to regulate matters that are exclusively reserved to the federal government, because it operates in a field over which Congress has exercised exclusive authority, and because it conflicts and interferes with the federal laws and regulations.

## SECOND CAUSE OF ACTION

### EQUAL PROTECTON CLAUSE OF THE
### 14TH AMENDMENT TO THE U.S. CONSTITUTION

105. Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

106. The Ordinance irrationally and impermissibly discriminates among similarly-situated citizens and non-citizens who rent or seek to rent an apartment in Fremont.

107. The Ordinance irrationally and impermissibly discriminates against occupants, or renters, while exempting home owners.

108. The Ordinance irrationally and impermissibly discriminates against non U.S. citizens and nationals and legal permanent residents on the basis of national origin and alienage by creating a condition precedent to obtaining occupancy license without any rational basis or compelling state interest.

109. The Ordinance irrationally and impermissibly discriminates among similarly-situated classes of non-citizens living with lawful status in the United States.

### THIRD CAUSE OF ACTION

### DUE PROCESS CLAUSE OF
### THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

110. Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

111. The Ordinance deprives all plaintiffs of liberty and property interests without due process of law and is void for vagueness.

### FOURTH CAUSE OF ACTION

### FAIR HOUSING ACT
### 42 U.S.C. § 3601, *et seq.*

112. Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

113. By enacting the Ordinance, Defendant has imposed terms and conditions on the rental of housing in the City that has a disproportionate negative impact on Latinos in violation of the federal Fair Housing Act.

## FIFTH CAUSE OF ACTION

## 42 U.S.C. § 1981

114. Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

115. The Ordinance, by targeting the disproportionately Latino occupants of apartment complexes in the City, denies to Latino Plaintiffs, because of their national origin, the right to make and enforce contracts on the same basis as white persons in violation of 42 U.S.C. 1981.

## SIXTH CAUSE OF ACTION

## COMMERCE CLAUE OF THE U.S. CONSTITUTION AND DUE PROCESS CLAUSE OF THE 14TH AMENDMENT OF THE U.S. CONSTITUTION

116. Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

117. The Ordinance violates the rights of out-of-state business entities who wish to do business in Fremont, NE by requiring them to comply with a local ordinance that imposes a burden on inter-state commerce, which only Congress may do.

118. Specifically, the Ordinance requires all businesses that conduct business in the City of Fremont to register and use E-Verify as a condition precedent to doing business in the City.

119. The federal government does not mandate registration and use of the E-Verify system for all businesses that conduct business in the United States; in fact, only certain government contractors or businesses that handle government contracts are required to register and use the E-Verify system to determine work authorization for their employees.

17

120. In addition, or in the alternative, the Ordinance is vague with respect to whether all businesses wishing to do business in the City of Fremont or only those businesses seeking to apply for a business license with the City are required to register and use the E-Verify system.

121. Accordingly, the Ordinance could subject employers to liability for employing individuals in the City of Fremont without a meaningful pre-deprivation (i.e. potential civil liability for failing to comply with the law) opportunity to contest the City's determination that the employer had failed to comply with the Ordinance.

## SEVENTH CAUSE OF ACTION

### ARTICLE XI OF NEBRASKA CONSTITUTION: EXCEEDING MUNICIPAL AUTHORITY

122. Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

123. Under Nebraska law if a city is not a home rule city it only has those powers granted to the city by the State Legislature.

124. Fremont is not a home rule city as it has not passed a home rule charter.

125. Neb. Rev. Statutes 16-246 provides the general police power for non-home rule cities and states in relevant part: "A city of the first class may make all such ordinances, bylaws, rules, regulations, and resolutions not inconsistent with the general laws of the state as may be necessary or expedient, in addition to the special powers otherwise granted by law, for maintaining the peace, good government, and welfare of the city and its trade, commerce, and manufactures, for preserving order and securing persons or property from violence, danger, and destruction, for protecting public and private property, and for promoting the public health,

safety, convenience, comfort, and morals and the general interests and welfare of the inhabitants of the city."

126.  Under the general police power, a municipal entity may only act in accordance with those powers delegated to it by the Nebraska State Legislature.

127.  By requiring proof of legal presence in the U.S. as a condition of leasing a dwelling or requiring businesses to use the E-Verify system as a condition of doing business in the City, the Ordinance authorizes the City of Fremont's Police Department and City Attorney to enforce federal immigration laws.

128.  The Nebraska State Legislature has not extended to municipal entities the power over the enforcement of federal immigration laws. By requiring proof of legal presence in the U.S. as a condition of leasing a dwelling or requiring businesses to use the E-Verify system as a basis for doing business in the City.

129.  The Ordinance is void as arbitrary and unreasonable, because the express requirements of the ordinance bear no substantial or rational relationship to the health, safety, peace, comfort or general welfare of the citizenry of the City of Fremont.

## ATTORNEYS' FEES AND COSTS

Plaintiffs are entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request the following relief:

    i.   A declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the Ordinance void because it violates numerous provisions of the United States Constitution and various other federal laws as set forth herein;

  ii. A preliminary and/or permanent injunction pursuant to Fed. R. Civ. P. 65 prohibiting Defendant and its officials, employees and agents from implementing or enforcing the Ordinance;

  iii. An order awarding plaintiffs costs and attorneys' fees, pursuant to the statutes cited herein, 42 U.S.C. § 1988, and any other applicable law;

  iv. Such other and further relief as this Court deems just and proper.

DATED: July 21, 2010       Respectfully submitted,

                 /s Shirley Mora James
                 Shirley Mora James, NSBA #19705
                 MORA JAMES LAW
                 601 Calvert Street, Suite A
                 P. O. Box 21772
                 Lincoln, NE 68542
                 T: (402) 890-2295
                 F: (402) 435-1006
                 E: SA@MoraJamesLaw.com

                 Ricardo Meza*
                 IL State Bar No. 6202784
                 Alejandro Aixala*
                 IL State Bar No. 6295749
                 MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
                 11 East Adams Street, Suite 700
                 Chicago, IL 60603
                 T: (312) 427-0701
                 F: (312) 427-0691

                 *Application for admission pending