**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**
**OMAHA DIVISION**

| | | |
|---|---|---|
| **FRED H. KELLER, JR., *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 8:10-cv-00270** |
| **v.** | ) | |
| | ) | **PLAINTIFFS' MEMORANDUM** |
| **CITY OF FREMONT,** | ) | **IN SUPPORT OF MOTION** |
| | ) | **TO PROCEED UNDER** |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO PROCEED UNDER FICTITIOUS NAMES**

Plaintiffs, JUAN DOE, JUANA DOE, JUANA DOE #2 ("Doe Plaintiffs"), respectfully move this Court pursuant to the principles set forth below for permission to proceed in this matter under fictitious names and anonymously and in support thereof state as follows:

**INTRODUCTION**

On June 21, 2010, after over a two-year effort, residents of the City of Fremont, Nebraska ("City" or "Fremont") voted to enact a local ordinance relating to "illegal aliens." In so doing, the City of Fremont delved into federal immigration law and followed the lead that only a handful of local communities have undertaken. Like the local ordinances in cities such as Escondido, California; Hazelton, Pennsylvania; Farmer's Branch, Texas; Riverside, New Jersey; Valley Park, Missouri; and Cherokee County, Georgia, Fremont's Ordinance 5156 ("Ordinance") seeks to regulate immigration at the local level and imposes severe burdens on tenants living in apartment complexes and the local business people who operate those

complexes. The Ordinance unlawfully establishes a system of occupancy licenses whereby the City seeks to register all tenants for the purpose of identifying individuals it determines not to be "lawfully present" in the United States and effectively ejecting them from Fremont by denying them the right to reside in rental housing and is thus an unlawful intrusion into immigration law. The Ordinance has attracted both local and national attention and has evoked raw negative emotions.

The Doe Plaintiffs reside in Fremont and would like to continue living there. *See* Declaration of Juan Doe ¶ 3; Declaration of Juana Doe ¶ 3; Declaration of Juana Doe #2, ¶ 3. The Doe Plaintiffs are familiar with the Ordinance, though they are not certain of its consequences. *See* Declaration of Juan Doe, ¶ 7; Declaration of Juana Doe, ¶ 7; Declaration of Juana Doe #2, ¶ 7. Because various terms in the ordinance are undefined or vague, Doe Plaintiffs fear that they will not be able to shape their conduct to avoid the Ordinance's penalties. *See* Declaration of Juan Doe, ¶ 8; Declaration of Juana Doe, ¶ 8; Declaration of Juana Doe #2, ¶ 8. The Doe Plaintiffs also fear that future landlords may refuse to rent to them because the Doe Plaintiffs are Latino or because of their present immigration status. *See* Declaration of Juan Doe, ¶ 11; Declaration of Juana Doe, ¶ 11; Declaration of Juana Doe #2, ¶ 11. The Doe Plaintiffs are concerned because they do not have the resources to pay a fine for violating the ordinance. *See* Declaration of Juan Doe, ¶ 10; Declaration of Juana Doe, ¶ 10; Declaration of Juana Doe #2, ¶ 10.

## ARGUMENT

### I. The Court Has the Discretion to Protect the Privacy of Parties in Litigation

The Federal Rules of Civil Procedure require that the litigants provide "the names of the parties." FED. RULE CIV. P. 10. However, various federal courts of appeals have upheld the need

for preserving anonymity in cases where revealing a party's true identity could lead to physical violence, deportation, and retaliation against plaintiffs. *See Lozano v. City of Hazelton,* 496 F.Supp.2d 477, 505 (M.D. Pa. 2007) (collecting cases). In fact, courts have allowed the following plaintiffs to proceed anonymously: undocumented immigrants challenging state action preventing them from attending school, *Plyler v. Doe*, 457 U.S. 202 (1982); individuals seeking abortions, *Roe v. Wade*, 410 U.S. 113 (1973); individuals suffering from mental illness, *Doe v. Colauitti*, 592 F.2d 704 (3rd Cir. 1979); and minors challenging legality of school religious programs. *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981). "The common thread running through [cases allowing party anonymity] is the presence of some social stigma or the threat of physical harm to the plaintiffs attaching to disclosure of their identities to the public record." *Doe v. Rostker*, 89 F.R.D. 158, 161 (N.D. Cal., 1981); *see also James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (reasons to preserve anonymity include "to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected"); *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("[t]he social stigma attached to the plaintiff's disclosure was found to be enough to overcome the presumption of openness in court proceedings"); *Stegall*, 653 F.2d 180 (threats of violence and special vulnerability of child litigants weighed in favor of maintaining Doe's anonymity). In light of the nature of this matter and the fact that it involves issues touching upon immigration status, the Doe Plaintiffs are fearful of having their true identities revealed.

The Eighth Circuit has not given clear guidance as to when a pseudonym may be used. However, in *Roe v. St. Louis Univ.*, 2009 WL 910738 (E.D. Mo. April 2, 2009), the Federal

District Court for the Eastern District of Missouri acknowledged that courts often use a totality of the circumstances test to determine whether a plaintiff may proceed under a pseudonym. The Federal District Court found that cases permitting the use of pseudonyms feature three common characteristics: 1) the plaintiff is challenging government activity 2) the plaintiff is required to disclose information of the utmost intimacy and 3) the plaintiff risks criminal prosecution through the information contained in the pleading. *Id.* at *3; *see also Doe v. Frank,* 951 F.2d at 323 (court must determine whether plaintiff "has a substantial privacy right which outweighs the customary constitutionally-embedded presumption of openness in judicial proceedings").

Additionally, in a recent case challenging the constitutionality of a local housing ordinance that targeted immigrants, *Lozano v. City of Hazelton*, 496 F. Supp. 2d 477 (M.D. Pa. 2007), the Federal District Court for the Middle District of Pennsylvania set forth an even more rigorous test for proceeding anonymously. In *Lozano*, the court held that the following factors are relevant in deciding whether anonymity is permissible: "(1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives." *Lozano*, 496 F. Supp. 2d at 506. The court in *Lozano* also named three factors that weigh against the use of pseudonyms: "(1) the universal level of public interest in access to the identities of the litigants; (2) whether, because of the subject matter of the litigation, the status of the litigant as a

public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated." *Id.*

Although this court is not bound by the decision of either district court, the Doe Plaintiffs urge this court to analyze their motion under these standards. Under the *Roe v. St. Louis Univ.* totality of the circumstances test, the Doe Plaintiffs satisfy the requirement because they are challenging a city ordinance, they are required to disclose intimate information about their immigration status, and they risk criminal prosecution in the form of deportation or other immigration proceedings through information contained in the pleading. Additionally, the Doe Plaintiffs would satisfy the more rigorous test for proceeding as anonymous plaintiffs set forth in *Lozano*. Also, none of these factors weighing against the use of pseudonyms is present in this case. Because the facts in *Lozano* are so closely analogous to the facts in the case at bar, the Doe Plaintiffs analyze their motion under the *Lozano* test and urge this court to adopt this standard, if it so sees fit.

## II. The Doe Plaintiffs satisfy the *Lozano* factors and therefore should be permitted to proceed under pseudonyms.

The anonymous plaintiffs in *Lozano* sought protection of their identities for many of the same reasons cited by the Doe Plaintiffs – concern and fear regarding public knowledge of their legal status could lead to deportation as well as harassment and intimidation. *Id.* at 507-11. In *Lozano*, the court found that a record of hostility towards the plaintiffs existed such that it created a justified fear of revealing the anonymous plaintiffs' identities. *Id.* at 510. At the same time, the court also held that the negative consequences of revealing the anonymous Doe Plaintiffs' identities could lead to Plaintiffs abandoning their challenge to the validity of the City's ordinance. *Id.* at 512. This would undermine the public's interest in determining the

constitutionality of the City's ordinance that may violate the constitutional rights of immigrants who lack authorization to enter or work in the United States. *Id.* As in *Lozano,* the factors in the case at bar weigh heavily in favor of allowing the Doe Plaintiffs to proceed anonymously.

**1. The identities of the plaintiffs have been kept confidential.**

The identities of the Doe Plaintiffs have remained confidential. None of the Doe Plaintiffs have spoken to the press or otherwise identified themselves in public. They have not waived their right to proceed anonymously. This factor weighs in favor of allowing Doe Plaintiffs to use pseudonyms.

**2. The Doe Plaintiffs have stated compelling reasons for their request to proceed anonymously.**

The Doe Plaintiffs request to proceed anonymously because they fear that disclosure of their real names and addresses would subject them to deportation as well as hostile treatment from their fellow citizens. Specifically, the Doe Plaintiffs fear that the United States Department of Homeland Security, Immigration and Customs Enforcement agents could take action against them if they proceed in this suit using their real names. Moreover, given the nature of this dispute and the issues involved, it is almost certain that there will be publicity surrounding this litigation thereby exposing Doe Plaintiffs to further scrutiny and harassment by those in the community who may be critical of or hostile towards undocumented immigrants. In fact, already, local news stories discussing the Ordinance have provoked harsh and aggressive anti-immigrant comments from certain individuals. Like many online periodicals, the Fremont Tribune allows readers to post comments to their news articles and stories regarding the Ordinance have inspired the following comments:

- "it is true illegal activity comes with illegal immigrants, it is true we pay taxes and they do not, it is true they can come here legally and be happy like the rest that do it legally, it is true they are stealing identities, it is true

they are being irresponsible having children here when they are not legal citizen [sic], it is true that they are taking jobs from legal citizens. Enough with racial comments people I speak fluent Spanish and only racial comments I hear." Posted in response to: Chris Zavadil, *Fremont Voters Say Yes to Immigration Ordinance,* FREMONT TRIBUNE, June 22, 2010, *available at:* http://fremonttribune.com/article_abf359d6-7d86-11df-928c-001cc4c002e0.html.

- "I have watched Schuyler become little Mexico, I have seen the people who lived there loose [sic] their jobs and had [sic] pay cuts because the Mexican came in and took jobs. I know that when immigration shows up they scatter. There are so many illegals and it has destroyed a very wonderful town and Fremont and Columbus are next. For those of you who are for illegals coming in, I hope you feel the same when your job is gone or you have to take a major pay cut. Good Luck." *Id.*

- "I am imbarassed [sic] for our country. I can't believe we still have such stupid people with all the great teachers out there. I am going to try my shot at Teaching. ILLEGAL=NOT LEGAL. Did it work? All the people who think making it tough to be an Illegal immigrant is wrong should go try to be an illegal somewhere else. The opposite of illegal immigrant is legal immigrant. There are ways. If someone you don't know walked into your house, ate all the food in your fridge, ran up your utility bills, left trash everywhere then demanded you give them money and put them on your insurance, you would call the cops. Why, because it is trespassing, theft, littering, and fraud. All these things are ILLEGAL. Oops, that implicates the ILLEGAL immigrants…" *Id.*

- "To the voters who support this law, Thank You! To those against it, you are simply naïve if you don't realize that the United States is undergoing a criminal invasion of illegal aliens that are bankrupting governments all over. Schools, hospitals, jails, welfare etc. are being abused by illegals and it's got to stop" *Id.*

- "Texas isn't enforcing any immigration laws, its [sic] a sanctuary city! Im [sic] sitting here in Houston hoping to God you pass this law so there is hope for the rest of us! Houston TX looks like the center of Mexico right now and more pour in every day! It [sic] sickening and it headed [sic] your way! VOTE YES, get them out of here before they destroy this entire country! HELP US!" Posted in response to Brett Ellis, *What Kind of Impact Could This Ordinance Have,* FREMONT TRIBUNE, June 17, 2010, *available at:* http://fremonttribune.com/news/local/article_7252572a-7a22-11df-a964-001cc4c03286.html.

While it is unclear who wrote these comments, what is clear is that the Doe Plaintiffs' immigration status may subject them to threats or intimidation from individuals who bear strong anti-immigrant sentiments, especially towards Latino immigrants who lack legal status. Indeed, this factor weighs heavily in favor of allowing the Doe Plaintiffs to proceed under pseudonyms.

**3. The public has a strong interest in the outcome of this litigation and allowing the plaintiffs to proceed anonymously would vindicate this interest.**

As with the legal issues sought to be resolved in the *Lozano* case, the residents of Fremont have a right to know whether the housing and employment provisions of the Ordinance are unconstitutional. If Doe Plaintiffs cannot proceed anonymously, they might abandon their challenge and thus, the residents of Fremont would not learn whether the Ordinance violates the constitutional rights of individuals who wish to rent or lease housing or employ individuals in Fremont. The public interest in maintaining the confidentiality of the Doe Plaintiffs' identities weighs in favor of allowing them to proceed under pseudonyms.

**4. Because the contentious issues in the case are legal rather than factual, knowing the names of the Doe Plaintiffs is not necessary.**

As in *Lozano,* this case turns on complex legal issues involving the relationship between federal, state, and local authority and the protections of the Fourteenth Amendment. The case does not involve factual determinations about the credibility of witnesses or the motivations of individual actors. As such, this case depends on the parties' legal arguments and knowledge of the Doe Plaintiffs' identities will not impact these arguments. Thus, this factor weighs in favor of allowing the Doe Plaintiffs to proceed anonymously.

**5. Proceeding under pseudonyms will not harm the Doe Plaintiffs.**

Although an adverse outcome in this litigation may harm the Doe Plaintiffs, there does not appear to be any harm they would suffer as a result of proceeding in this litigation via the use

of a pseudonym. Because an adverse outcome would not harm Doe Plaintiffs especially due to their use of pseudonyms, this factor is neutral.

**6. The Plaintiffs have clear and legitimate reasons for proceeding anonymously.**

The Doe Plaintiffs would like to proceed anonymously in order to protect themselves and their families from any harsh consequences, either in the form of immigration proceedings or angry retaliation by citizens who oppose immigrants or Latinos. Because the motivation of the Doe Plaintiffs is forthright and legitimate, there is no ulterior motive which weighs against allowing them to proceed under pseudonyms.

**7. None of the factors that weigh against the use of pseudonyms are present in this case.**

The factors that weigh against the use of pseudonyms—a public interest in the identities of plaintiffs, the status of the Doe Plaintiffs as public figures, or malicious opposition to the use of pseudonyms—are not present in this case. As in *Lozano*, there is widespread interest in this case, but not in the controversy between the individual parties. *Lozano*, 496 F. Supp. 2d at 513. No doubt the public is interested in whether or not Fremont may create an immigration scheme for its city, but there is no legitimate interest in knowing the identities of the plaintiffs, especially since disclosure may result in serious negative consequences for the plaintiffs. Furthermore, none of the Doe Plaintiffs are public figures and therefore the second factor weighing against the use of pseudonyms does not apply here. Finally, at this stage of the litigation, there is no strong opposition to the use of pseudonyms and therefore the third factor weighing against the use of pseudonyms does not apply here.

In this case, the Doe Plaintiffs seek to proceed as anonymous plaintiffs to protect themselves from the negative ramifications of revealing their true identities, which include

concerns of possible deportation or prosecution as well as fear of harm or public intimidation by individuals with anti-immigrant sentiments. The Doe Plaintiffs are seeking to challenge governmental action that is based on pure issues of law and the Doe Plaintiffs' true identities have no bearing on the challenged governmental action.

## CONCLUSION

For the reasons set forth above, the Doe Plaintiffs request that this Court permit them to proceed in this matter anonymously.

Respectfully Submitted,

DATED: July 21, 2010 By: /s Shirley Mora James

Shirley Mora James
NSBA #19705
601 Calvert Street, Suite A
P. O. Box 21772
Lincoln, NE 68542
T: (402) 890-2295
F: (402) 435-1006
E: SA@MoraJamesLaw.com

Ricardo Meza*
IL State Bar No. 6202784
Alejandro Aixala*
IL State Bar No. 6295749
MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
11 East Adams Street, Suite 700
Chicago, IL 60603
T: (312) 427-0701
F: (312) 427-0691

*Application for admission pending

**CERTIFICATE OF SERVICE**

I certify that on July 21, 2010, I electronically submitted the following document with the Clerk of the Court for the U.S. District Court for the District Court of Nebraska, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means. I also certify that I served the attorneys that represent the Defendant City of Fremont.

/s Shirley Mora James
Shirley Mora James